This honorable appellate court for the Second District is now open. The Honorable Justice Robert McLaren presiding, along with Justice Susan Hutchinson and Justice George Bridges. The case is number 2170784, People of the State of Illinois, Plaintiff-Appellee v. Lamar Meekins, Defendant-Appellant. Arguing for the appellant, Phyllis Che Pergo. Arguing for the appellee, Alyssa Radulinski. Thank you. Good morning. This is Justice McLaren. Thank you, counsel, for being available to proceed with oral arguments today. Before we begin, a word or two about our format. Just as you were in the courthouse in Elgin, you will each have 15 minutes for your arguments. The appellant will also have up to five minutes for rebuttal. You've heard the timer. You know what it sounds like. It will be operated by the clerk of the court. You do not have to use all of your time. However, due to the format, you will not be asked questions during your presentation. You will have the full 15 minutes. And I know, Ms. Pergo, you know that we've read the case. We've read the facts. We even have a pre-hearing memorandum. So we are fully apprised of the issues. We may not be fully apprised of your priorities insofar as which of the issues you want to address first and foremost. After Ms. Pergo is done, we will ask questions, Justice Hutchinson, Bridges, and then myself. And then we will have the appellee's argument followed by questions in the same order. And then, Ms. Pergo, if you wish, you may have five minutes for rebuttal after which there will be more questions. I would like to remind the parties that this is not to be recorded. The only party that's supposed to record this is the clerk of the office. Do either of you counsel have any questions prior to commencement of the hearing? No, Your Honor. No questions from Phyllis. Okay. No, Your Honor. No questions from me, Wissam. Thank you. Okay. You should identify yourself when you speak. I should point that out as well. So Ms. Pergo, you may proceed. Thank you. Good morning, Your Honors. May it please the Court. I represent Lamar Meekins, who is appealing his finding of guilt and imposition of a period of supervision for driving with a substance in his breath, blood, or urine resulting from the unlawful consumption of cannabis. We maintain that the state's evidence was insufficient to prove the essential elements of the offense. Just briefly, Mr. Meekins was stopped for speeding. An odor of cannabis was detected in the vehicle. He refused to exit his car. And thereafter, there was escalating resistance by Mr. Meekins to arrest. The subsequent search of the car revealed a cannabis blunt. So we would maintain that the briefs have identified five cases that are discussed both in the appellant's opening brief and then in the state's answer. There are some other cases that are discussed by the parties, but the primary five cases that are discussed in both briefs and that deal specifically with the Section 11-501A6 of the Vehicle Code, that these are the five cases that are most instructive and even controlling of the results that should obtain in these cases. So, just briefly, the five cases, the affirmances were the Briseno case from the First District, the Capon and Castino cases from the Second District, and the reversals of convictions occurred in the McPeake case from the Second District and the Allen case from the Third District. So, your honors are well familiar then with the underlying facts of this case. And so, what we maintain is the primary differences in the precedents that have resulted in affirmance as opposed to those precedents which have resulted in reversals of convictions are, first of all, the defendant's admission to the unlawful consumption of forbidden substance, of a contraband substance. So, you cannot have a conviction under Section 501A6 unless there has been first an unlawful consumption, and in this case, an unlawful consumption of cannabis. In each of those affirmed cases, the defendant had admitted the consumption of the substance, the illegal substance that was involved in those cases. In fact, only Briseno of the affirmed cases involved cannabis. The other two cases, one involved prescription drugs and the other involved heroin. The second commonality in the affirmed cases that is missing in this case. So, in this case, Mr. Meekins did not admit to the use of any illegal substance. The second type of evidence in the affirmed cases is field sobriety tests. That also is missing in this case. So, the nature of an admission or the nature of the results of field sobriety tests are particular forms of objective evidence, and it is exactly objective evidence that is missing in this case. In fact, the reliance for a connection between evidence and the requisite use of cannabis by or alleged use of cannabis by Mr. Meekins relies in the state's evidence really on the odor of cannabis that supposedly existed heavily in the car and surrounded his person. But the Allen case, which was a little earlier case from the third district, makes the distinction between an odor of cannabis that might indicate the presence of more recent decision of our second district in the McPeak case, both relies on Allen but draws a bit away from it because the McPeak case says that the odor of cannabis on the breath could indicate the presence of cannabis in the breath. But what is important about McPeak is that it really does indicate how specific the connection needs to be from any circumstantial proof, such as the odor of a substance, and the actual conclusion that that substance existed in the breath, urine, or blood, and certainly indicates that in order, meaning McPeak indicates that in order to prove an unlawful consumption, there has to be some showing of recency of the connection between, let's say, the odor of cannabis and the conclusion that that cannabis remains in the defendant's system. And in McPeak, the defendant actually had admitted to using cannabis an hour or so before he drove his vehicle. But McPeak found that even that evidence was insufficient to show that the cannabis would have remained in the defendant's system. So in this case, even in so far as there was an odor of cannabis, and I want to stress that we maintain that the odor of cannabis that was present in this case was only an odor about the person, about, around, surrounding Mr. Meekins' person. It was not specifically evidence about his breath. And there's a very specific discussion of this in the appellant's opening brief in our opening brief at pages 19 to 20 that describes specifically what all of the evidence was, you know, obviously with the paid citations regarding the alleged odor surrounding Mr. Meekins, but actually an absence of sufficient evidence showing that the odor was on his breath. And that, and assuming that this court accepts the reading of the evidence that we have described again at pages 19 and 20 of our opening brief, this would fall directly into the McPeak holding. So it's important, obviously, and the court is aware that when we assess this violation under 501A6 of the statute, we are not looking at the question of whether, we are not looking directly at the question of whether or not Mr. Meekins may have been under the influence of something. So there are discussions, and the state relies on the fact that he had, may have had bloodshot eyes and that his conduct was unusual. All of this perhaps suggests the possibility of intoxication, but the question of intoxication is not the question under this section of the statute. The question is the actual presence of an illicit substance in the defendant's system that was caused by an illegal use or ingestion of that substance. And we maintain that that was not proven beyond a reasonable doubt in this case, and for that reason, we ask for a reversal of the defendant's conviction. And if there are any questions, I'm concluded with my presentation on the direct part of the case here. Thank you. Justice Hutchinson, do you have any questions? I do, thank you. Ms. Perko, are you suggesting by your argument that there has to be some sort of expert testimony in order to accomplish a proof beyond a reasonable doubt? Well, the court's, it's my opinion that there should be expert testimony of some nature. Now, that expert testimony does not, under the casement, necessarily have to be and this is made particularly clear by the Allen decision from the third district. There must be a connection that can lead to a conclusion that this substance remains in the defendant's system. So there has to be first sufficient evidence that there was some sort of unlawful consumption. And that consumption needs to be recent in order to maintain, to form a conclusion that that substance remains in the system. And Allen makes clear that there needs to be some sort of a bridge there, even if you, even if the evidence is tending to prove consumption, there needs to be a bridge to the conclusion that the substance remains after a consumption. So yes, there needs to be some sort of evidence. I mean, it probably could come from a police officer if that police officer had sufficient experience and would be able to formulate an opinion. But obviously, neither this case nor really any other case absent an admission by the defendant finds that kind of proof. So yes, it's our position that there would need to be some expert testimony to bridge that span from the defendant's conduct to the presence of the substance in his system. MARY JO GIOVACCHINI OK. Your client at the stop was repeatedly said he had not used, no one else had used. He didn't know what the officer was talking about, although that's a paraphrase on my part. And so, you know, he said it's not happening yet. So we don't have an admission, but we do have within his arm's reach something in the ashtray that could have, and the police officer basically said probably did create that odor, that very strong odor of burnt cannabis. How, why is this different than Brisano? LORRAINE CUNNINGHAM I'm sorry, why is it different than what? MARY JO GIOVACCHINI Brisano, where there actually wasn't admission. Here we have the contraband sitting right within arm's reach. LORRAINE CUNNINGHAM Well, actually, likewise in McPeak, where the conviction was reversed, there was a hit pipe, I believe, in the vehicle. So the mere fact that there is paraphernalia in the vehicle, and even though that paraphernalia may harbor the odor, that does not necessarily, without more, meaning presumably without expert testimony or an admission, that does not connect that paraphernalia, or in this case, the burnt blunt, to a recent usage such that that substance is remaining in the system. MARY JO GIOVACCHINI I know that there, you've emphasized five cases that are important to this particular charge, but are there any out-of-state cases that support your position that we need something more, something that can be detected? LORRAINE CUNNINGHAM I'm sorry, but I'm not aware of any out-of-state case. And mostly, I would say that I didn't research out-of-state, probably believing that I would have needed to have found the statute that was drawn the way our statute is drawn. So I can't answer that. I don't have any out-of-state authority. MARY JO GIOVACCHINI Okay. Thank you very much, Justice McLaren. And, Ms. Perko, I have no other questions. LORRAINE CUNNINGHAM Thank you, Judge. CHAIRMAN POWELL Justice Bridges, do you have any questions? MR. PERKO I do. Thank you, Justice. Ms. Perko, the question that I have is you cite in your brief on page 19 both McPete and Allen that you addressed this morning to support your position that he was not proven guilty. In McPete, was there any, and also in Allen, was there any evidence of bloodshot, glassy eyes, constricted pupils, or any evidence, opinion evidence, where the witness opined that this person was under drugs as we have in our case? MS. PERKO You know, I was concentrating particularly on the field sobriety test. And I'm sorry that I can't answer specifically that I remember whether or not there was bloodshot eyes or constricted pupils in those other two cases. But what I will say in general, in terms of that nature of proof, certainly I'm sure that you as well as, let's say, the other members of the panel and counsel for the state, you know, have read any number of cases and the recognition of the fact that bloodshot eyes and constricted pupils can be evidence of many different situations, including medical situations that would be unrelated to intoxication. But what's really crucial here is that those constricted pupils and bloodshot eyes, in terms of criminal offenses, are indicative of many types of either alcohol or drug intoxication. And therefore, even assuming that there is such, that there wasn't that kind of evidence in McPeak and Allen, the fact that there is such evidence in this case, you know, may or may not indicate intoxication, but it does not bear on the question of the unlawful use of cannabis and the presence of cannabis in the defendant's system. Thank you, Ms. Perko. And Justice McLaren, I have no further questions at this moment. Thank you, Justice. Thank you. I have a few questions. You, Ms. Perko, indicated that the issue is not influence, but whether the cannabis was in his bloodstream. And he refused tests, I believe, at least at one time. And I just want to make sure that I understand that you're not saying that if a defendant is not tested, he's home free, exclusive of an admission. Is that correct? Correct. And I'm not saying that there must be a scientific test. In fact, it would appear that there is no scientific test that would detect the presence of cannabis in your breath or in a person's breath, for instance. So, no, I'm not saying that. You know, those kinds of the inference to which you are referring that would arise from refusal of a test, that inference can the inference of a consciousness of guilt can be drawn, depending, obviously, on the nature of the refusal. And the refusal that I recall in this case from the record, is one that caused the defendant to take actions to protect his private parts. So, I would submit that the inference here would be quite weak based on the nature of what was going on at the time and Mr. Meekin's reaction to having what he apparently perceived as an involuntary draw from his body. Was there any testimony regarding the relative level of smoke or particulate matter suspended in the air when the police officers came on the scene? Specifically, with reference to smoke, the officer testified that although the odor in the vehicle was strong, there was no smoke. So, I believe that would answer your question, my recollection from the record, that there was no smoke present. Did Fry testify that when he accompanied the defendant into the ambulance that he could smell cannabis on the defendant's breath? So, this was the reference that I was making during my presentation about pages 19 to 20 of my brief. On direct testimony, he testified not that he smelled it on the breath, but that he smelled it generally on the person. I can't quote the record exactly, but he definitely did not testify that it was on his breath. Then there was an unfortunate question on cross-examination by defense counsel who said to Fry, did you testify on direct examination that it was on his breath? To which Fry answered yes. Well, that's not what he testified to on direct examination. I read that direct examination a couple of times and I feel very confident with what I've written on pages 19 and 20 of my original brief. And then on further cross-examination, he also says that there's no reference to the breath in his police report. So, you know, it is my position based on what I just described that Fry did not testify that there was a smell on the breath. But that is my best recollection of the record. And it's, you know, I believe thoroughly discussed in my brief. And I'll leave it to your honors to decide whether you accept my interpretation. If, are we allowed to imply or infer that the smoke in the vehicle was being inhaled by the defendant? It was being done voluntarily to the extent that he didn't roll the windows down and have the car smoke exhausted. And as such, if there was secondhand smoke that he was inhaling, that he could be just as guilty for secondhand smoke as for firsthand smoke? Well, first of all, I want to repeat that the evidence seems to be that there was no smoke present in the vehicle. So, I'll stress that again. With reference to the voluntariness of inhalation secondhand, I would submit that you would have to have, let's say, considerable evidence of aiding and abetting or a joint conduct or whatever and an intent to unlawfully use the product. So, I don't know that I've ever seen a case of secondhand smoke. I'm not trying to say there aren't such cases. I'm saying that I'm unfamiliar with whether there are or not. Secondhand smoke can arise in at least two situations. One is where someone smokes a cigarette or a blunt and then inhales what they've exhaled and continues to inhale, exhale, inhale, exhale. And then there is the situation which you've referred to where somebody is inhaling the exhalations of some second or third party. And I believe according to the facts in this case, there was no other person in the vehicle, which means that the probability that he was inhaling someone else's exhalations is somewhat dubious. So, I would like you to comment on whether you think that it's possible that if someone hypothetically lights up a blunt and smokes it and is done with it to the extent that it hasn't been completely and consumed, places it into an ashtray or tosses it out the window and leaves the windows closed, that they are not only inhaling the original draft, but they are also inhaling the secondhand smoke that remains or burned cannabis that remains in the vehicle. Well, I would answer that your hypothetical would apply to this case or could apply to this case were it not for the fact that the proof appears to negate the existence of any smoke. So, I don't think in this case that your scenario could have occurred, in fact, because the evidence, as I recall it, negates the hypothesis that smoke existed in the vehicle at that time. Okay. Thank you. I have no further questions. Does Susan or George have any other questions? No, thank you. No, thank you. Thank you. Ms. Perko, you will have an opportunity to make rebuttal. Thank you. Thank you. I will now call on Ms. Wrabelinski. Yes. Thank you, Justice. All right. You may proceed. Thank you very much. May it please the Court. Good morning, Justices. First and foremost, I believe it is important in a matter such as this case, when reviewing the precedent, it states that the people may use direct, that we may use direct or circumstantial evidence to prove that a defendant had any amount of a drug, specifically in this case cannabis, in their breath, blood, or urine. As in the defense brief alludes to it seemingly more of needing direct evidence, which is just not the precedent in this state. Additionally, Justices, in both Prostino and Cathan, they discuss that even with or without field sobriety tests, there may be enough or sufficient circumstantial evidence to prove that a defendant, in fact, had a drug in his breath, blood, or urine, such as in this case. Additionally, I do believe it's important to note, as I noted in my brief, that people do not need an expert in a matter in this, even if charged, for example, in an A4 charge where you have to prove someone's under the influence of a drug. Our Supreme Court has held that experts are not necessarily needed. First and foremost, I think I discussed at length the consciousness of guilt in this matter, so I'm not going to reiterate all of that, but I do believe that the defendant's demeanor from start to finish in this matter is indicative of a consciousness of guilt, starting with him rolling his window down only one inch. That's not something that usually happens on a traffic stop, and right there you can start to infer that the defendant, based on the facts, that he knew that there was cannabis and that he had consumed cannabis either while or right before driving, and then from there on his behavior, which includes not getting out of the car, even being instructed approximately 20 times to do so by multiple officers, from his resisting arrest to he had, in essence, two refusals. A police officer's law enforcement had asked for a sample, blood and urine sample, which he refused, and then specifically when he went to the first hospital due to his medical complaints, medical professionals were seeking to obtain his urine for the course of their particular, trying to determine if the defendant had any sort of medical issues, not at the request of law enforcement, and that's when he, in lack of better terms, had a form of a freak out and didn't want anyone coming close to his genitalia, so in essence, almost two refusals, one from law enforcement and one from medical providers, and then obviously his other conduct in terms of lying about having a broken back, lying about being able to breathe, those sorts of things. Now, when it comes to the evidence of cannabis in this case, I know, Justices, you already spoke in terms of some of this, there was what appeared to be a burnt blunt that there was only approximately one inch left of with suspect cannabis in it. The deputy testified that he believed that it was recent due to the fact that there was such a small amount left on it. Additionally, even though the window was only open an inch, the officers testified that they could smell the strong odor of cannabis coming from that particular vehicle. We had Deputy Krause, Deputy Frye, and a firefighter all say that they smelled an odor of cannabis coming from the defendant, and even though I know Ms. Perko disagrees with this, there is evidence in the record specifically where Deputy Frye testifies that cannabis was coming from the breath, and defense counsel on the original case tried to cross-examine further the deputy on that, saying you didn't include that in a report, yet you still are testifying today that it came from the breath, and the deputy said yes, and so from that, the jurors are allowed to decide whether they accept that answer from the deputy or they don't, but obviously in this situation, they found him guilty. Further, that same deputy, Deputy Frye, he specifically testified that he believed that the defendant was under the influence of cannabis, and even though this is not an A4 charge, obviously that opinion testimony from the deputy who previously stated that he had training in detecting intoxicated motorists, that goes towards more circumstantial evidence to prove that the defendant had cannabis in his blood, breath, or urine at the time due to the fact that that deputy believed he was under the influence. Further, there was other things testified to in terms of bloodshot, glassy eyes. The firefighter also testified that he saw that the defendant had constricted pupils, which was specifically indicative of someone being under the influence of drugs. I think that's important testimony because that firefighter, he's not law enforcement per se, and as a matter of fact, in his capacity at that time, he was trying to medically treat the defendant, so for him to make such a statement is that I think it's really important. He also observed that odor of cannabis, and he also testified that he believed that the defendant was feigning this fake being unconscious story, and I think it's important, and I've already discussed in my brief why I believe the Braceno case and Castino case are more akin to this, but I think it's important to point out why McPeak and Allen are not. So in McPeak, much like this case, there's not your stereotypical bad driving. There was an odor of cannabis coming from the defendant. However, he admitted to taking only two hits out of his pipe within the last hour or two, which is not an extreme amount. There was paraphernalia in cannabis found in the car. However, there was no bloodshot or glassy eyes. There was no constricted pupils. He wasn't asked to do field sobriety tests. There was no mention of blood or urine testing or refusal. There was no law enforcement saying that the defendant in McPeak was under the influence. There wasn't multiple witnesses testifying about the odor of cannabis. There was no odor of cannabis coming from the breath, and that defendant, McPeak, didn't have a combative disposition. And I would just like to say, too, yes, there is not field sobriety testing in this case, but I do believe that based upon the defendant's overall demeanor with law enforcement from the very beginning to the very end when he was taken to the jail, it is safe to say that field sobriety tests were not going to be able to be performed based upon his behavior and his demeanor with the officers. And then in Allen, that case also started with a roadside safety check, so it wasn't the bad driving. There was an odor of burnt cannabis coming from the defendant's breath. He did have dilated pupils. However, he made an admission to smoking the night before. He wasn't asked to do field sobriety tests. He did refuse urine. There was no paraphernalia in the car, no cannabis. However, the most important part of why that case is so distinguishable from our case is the officer on cross-examination specifically stated he could not tell if the defendant had zero or 100 milligrams of an amount of cannabis on his breath or blood. That's completely different than what happened in our matter. And I think based upon everything that I just stated about Allen, Allen is not really controlling at all. The McPeak case is a little bit more, but like I said, Brasino and Castino are more controlling in our matter. In Brasino, there was cannabis from the breath. He admitted to smoking before driving. His eyes were dilated. He had slow motor skills. And even in that case, he didn't have paraphernalia, but he was combative with officers. In Castino, that matter was a heroin case. The defendant was giving different marks. The defendant did have constricted pupils. And according to the officer who had specialized training and under the influence, detecting motorists under the influence, field sobriety tests did indicate that the defendant was under the influence of heroin. And in that matter, the defendant, like in our matter, also refused urine testing. Justices, I just believe that based upon everything that, all of the evidence in this matter, that the jury came to the correct conclusion in this case. And with that, I have nothing else other than obviously questions from Your Honor. Thank you. Susan Hutchinson, do you have any questions? Yes, thank you. The state relies pretty heavily on the fact that there is, according to the officers, a strong odor of this substance in the vehicle. It's a contained space. The window was opened a little bit before the officer actually approached the vehicle, according to him. Do we have any cases that indicate that a strong odor within a contained space is evidence of current or recent use? Not to my knowledge. Not that that sort of evidence is basically the only evidence to find someone guilty of. And I don't recall reading any cases that that strong odor specifically itself determines recency of use. I think that's just something that the jurors can draw a conclusion based upon personal experience. Well, I hope they weren't all innocent. All right. How about this? There seems to also be some emphasis that there were actually ashes remaining on the blunt. That's used to show that it was maybe recent. Is there anything that would indicate that in terms of case law or something that we could put our finger on to say, oh, yes, this is good circumstantial evidence or this is solid circumstantial evidence? In terms of that, for example, I know that some of the cases like McPeak and Allen, they did briefly discuss paraphernalia. And so I would say that the cases that discuss paraphernalia, that is of importance, even though those cases reverse the convictions. I would note that obviously the courts do make note of whether there's paraphernalia in the vehicle. And so I believe that that is indicative of recent use. Because, for example, I mean, I don't know how clean of a car the defendant keeps. But, for example, ashes are something that dissipate and go away or can be cleaned out. And so I think that, for example, when Deputy Kraus was testifying that not only was the blunt only about an inch in length, which indicated him that it was used, not a fresh rolled unused one, that I think it can be inferred based upon both the odor and that blunt being in the size as it is that that can draw as circumstantial evidence as to defendant's recency of use of cannabis. Okay. And my last question kind of relates to during the struggle or the escalation of his not wanting to get out of the car. He was placed on the ground. We don't know how, but he was placed on the ground, probably face down. And then his body went limp. What does that have to do with this particular case and proof of consumption? In terms of the defendant, when he was faking his consciousness or limpness, as you heard, there was testimony from the firefighter who came and said that, you know, he checked the defendant's vitals and that he didn't believe the defendant went unconscious or limp as the defendant was pretending. So in this sort of situation, the defendant, that kind of behavior or demeanor is not the kind of behavior or demeanor of someone who's thinking and acting with ordinary care. Additionally, I do believe that had the defendant just been speeding or doing speeding in his car, he wouldn't have escalated and had the sort of with that going limp on the scene, faking not being able to breathe, faking being unconscious. He continued that behavior at the hospital. And I think it's important to also stress that when the defendant was told that he was going to be basically cleared for incarceration, he then started faking the story about having a broken back, which he, in fact, did not have a broken back. But I think all of that, all of that behavior goes to the defendant just not wanting any sort of blood or urine draw from himself, him trying to basically get out of trouble by faking having these illnesses or being unconscious. I think all of that further also helps, as I spoke about earlier, Deputy Fry testified that he believed the defendant was actually under the influence of cannabis. And like I said, someone who's thinking or acting with ordinary care would not act the way the defendant did. So I think that is further circumstantial evidence to help prove that he still had cannabis in his blood, breath, or urine. All right. Thank you, counsel. And thank you, Justice McClure. And I have no other questions at this time. Thank you. Thank you. Justice Bridges, do you have any questions? I do. Thank you very much. Ms. Wroblewski, you cite Kathryn and Bracino in support of your position. But isn't it true that in those cases that you have cited, that there was no admission by defendant regarding the use of drugs before driving? So in our case, there was no admission, correct. And in, for example, Kathryn, there was admission to taking the pill prior to driving. And the defendant, Bracino, did admit to smoking cannabis before driving. So our case is a little different in that there's no admission. However, based on everything I've stated previously, there's more evidence in our matters than I think even in Bracino, or Bracino, excuse me, and Kathryn to help prove that the defendant was guilty beyond reasonable doubt. But yes, there was no admission to the defendant whatsoever in terms of smoking cannabis. He denies it. And lastly, accepting the evidence there was an odor of cannabis coming from his breath, was there any evidence introduced as to how long it takes for urine? Was any of that introduced? No, there's no evidence of that. That's all the questions I have, Justice McClaren. Thank you. Ms. Perko, you may proceed with your rebuttal if you'd like. Thank you. There's one fact in the record that hasn't been discussed and that possibly is the state's response this morning. For instance, the state argues that we don't know how well or how clean or whatever Mr. Meekins keeps his car. I believe the evidence would show that this car did not belong to Mr. Meekins, but it belonged to his mother. So although we that somebody else may have used this car and been responsible for the presence of the odor of cannabis in the car, certainly that possibility exists, assuming that it was his mother's car, as I believe the evidence shows. Again, it appears that the state really relies significantly on Mr. Meekins' conduct. Mr. Meekins' conduct at the scene was found by the jury to constitute the offense of resisting arrest, and we have not argued against that conclusion in any way on this appeal. So we recognize that certainly Mr. Meekins' behavior at the scene and his response to the officers was obstructive or resisting arrest. But the connection of this resisting conduct or obstructing conduct to a conclusion of the presence specifically of cannabis in his system at that time is not something that can be made beyond a reasonable doubt. It is precisely this unusual conduct, and the fact that that conduct was found by the jury to have been committed to resist arrest certainly then does not support a conclusion specifically that it was prompted by cannabis. And with reference to the state's suggestion here that we don't need direct evidence of an offense in order to prove guilt, certainly that is well established. But the point to be made regarding my dichotomy of the affirmed cases versus the reversed cases is that in those reversed cases, there is some objective evidence on which to make the conclusion that the substance still existed in the defendant's system, and that objective evidence is the defendant's admission or the results of the sobriety test. It is very significant we submit that there is not that kind of objective evidence in this case and no evidence of, for instance, the police officer's expert opinion about how we would make a connection between an odor of cannabis and the presence of in our briefs. And this morning, we request that Mr. Meekins' judgment be reversed. Thank you. Justice Hutchinson, do you have any questions? I do, but at the risk of hanging up again because I hit the wrong button, I'm going to keep it brief. Ms. Perko, again, I go back to the blunt in the car. Isn't that some objective evidence, especially in the state it was in and described as it was? Well, it's more than objective evidence of possession of paraphernalia or actually possession of cannabis. But even that possession of cannabis does not connect to the consumption of cannabis and the presence of the cannabis substance in the defendant's person, in his system. So, I mean, yes, it's objective evidence, but it's subjective evidence of something that's not an issue and not an element of the offense that we're dealing with. Okay. All right. Thank you. And you seem to indicate that the fact that you're not resisting somewhat forecloses the state's argument that that evidence also has relevance to consciousness of guilt. Can't elements sufficient to prove one charge also be used again to even circumstantially to establish another charge? Yes, it can. But at best, the evidence of his conduct, I mean, as it would apply to the spectrum of drug charges or the field of drug charges that we're dealing with in this case, at best, that proof of conduct is showing some sort of intoxication. And I mean, it's not very well put to say some sort of intoxication. But what I'm meaning is it can show intoxication from some intoxicating substance, of which there are a myriad of intoxicating substances. But the question here is whether or not it is showing evidence of cannabis. And that is what is sadly lacking here is an indication that there was an unlawful consumption of cannabis. Yes, you know, the fact that his conduct might be attributed to intoxication. That's a fact. I mean, it's not a totally irrelevant fact. It's a piece of evidence. But it is such a small piece of evidence with such a low probative value in this conduct, as well as other matters, the mere smell of cannabis. I mean, all of these pieces of evidence, yes, they are admissible items of evidence. But even taken all together, they are insufficient to show the unlawful consumption of cannabis and remaining evidence of that consumption in the physical system. All right. Thank you, Ms. Perko and Justice McLaren. I have concluded my questioning. Thank you, Justice Bridges. Do you have any questions? No, I have no further questions. Thank you, Justice McLaren. Thank you. I have no further questions either. I believe that ends or finishes the oral argument. We will render a decision in due course. And thank you very much. Thank you, Your Honors. Thank you. Thank you. Mr. Kaplan, what's next insofar as procedure is concerned? I will stop the meeting right here. Everyone is free to hang up. And thank you very much. Thank you. Thank you, Mr. Kaplan. Bye-bye.